## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **GEORGE DEAN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**BEST BUY CO., INC.**<br><br>Defendant. | **Civil Action No.: _____**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff George Dean, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Best Buy Co., Inc. ("Best Buy" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

## PRELIMINARY STATEMENT

1.      Defendant designs, manufactures, markets, imports, distributes and sells consumer electronics and kitchen products, including the subject "Insignia Multi-Function Pressure Cooker." Defendant executed, controlled, or orchestrated every aspect of the Product's inception, design, manufacture, importation, packaging, marketing, distribution, and eventual sale.

2.      When a manufacturer sells a product, it has a duty to ensure that the product functions properly and safely for its advertised use, free from any defects. Upon discovering a defect, a manufacturer must explicitly disclose the defect and take corrective action or cease selling the product. Additionally, when a product manufacturer provides a warranty, it must stand by that

warranty. The present class action lawsuit arises from Defendant's breach of these stated duties and obligations.

3.     Plaintiff brings this action on behalf of himself and all other similarly situated persons who purchased any of the following model of Insignia (a brand owned by Defendant) Pressure Cookers[1,2] ("Recalled Pressure Cookers", "Class Pressure Cookers", or "the Pressure Cookers"):

- NS-MC60SS8

- NS-MC60SS9

- NS-MC80SS9

- NS-MCRP6NS9

- NS-MCRP6SS9



| Product | Image |
| --- | --- |
| **Insignia 6qt Multicooker**<br>NS-MC60SS8<br>NS-MC60SS9<br>NS-MC60SS9-C | |
| **Insignia 8qt Multicooker**<br>NS-MC80SS9<br>NS-MC80SS9-C | |

---

[1] https://www.cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard (last visited December 27, 2023).

[2] https://www.recallrtr.com/pc (last visited December 27, 2023).

4.      Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling and warranting of the Recalled Pressure Cookers.

5.      Specifically, these Recalled Pressure Cookers have dangerously defective and/or incorrect volume markings on the inner pot ("the Defect"). The Defect can cause consumers to overfill the pot resulting in hot food and liquids being ejected when the pressure cooker is vented using the quick release method or opened while its contents are pressurized, posing a burn hazard to consumers.[3]

6.      On October 26, 2023, Defendant Best Buy recalled nearly 930,000 of the above-referenced Recalled Pressure Cookers.[4]

7.      The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## JURISDICTION AND VENUE

8.      This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff, who are citizens of states different from Defendant, and (4) there are more than 100 Class Members.

---

[3] *Id.*
[4] *Id.*

9.      This Court has personal jurisdiction over Defendant because Defendant is a does business in this District, as Defendant has sold, marketed, promoted, and distributed the Pressure Cookers throughout this District.

10.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant sells and distributes its Pressure Cookers throughout the United States and has its principal place of business and headquarters within this District.

## PARTIES

### Plaintiff

11.     George Dean is a citizen of the State of Georgia and resides in Rome, Georgia. Rome is located within Floyd County, Georgia.

12.     Plaintiff purchased the Pressure Cooker, with the Model Number of NS-MC80SS9, from Defendant Best Buy online in 2021 based on the representations made by Defendant. During this time, Mr. Dean was unaware of the dangerous nature and incorrect markings on the Pressure Cookers. Mr. Dean purchased the Pressure Cooker with the reasonable assumption that the Pressure Cooker was safe, correctly labelled, and fit to use for its intended purposes. Mr. Dean would not have purchased the Pressure Cooker had he known of the dangerous and defective nature of the Pressure Cooker. As a result, Mr. Dean suffered an injury in fact when he spent money on the pressure cooker when he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

### Defendant

13.     Defendant Best Buy Co., Inc. is a Minnesota corporation with its principal place of business in Richfield, Minnesota. Best Buy's principal place of business is 7601 Penn Ave S.

4

Richfield, MN 55423 and process may be served upon its registered agent in the state Minnesota, CT Corporation System, 1010 Dale St. N Saint Paul, MN 55117.

14.     Defendant designs, manufactures, markets, distributes, and sells home appliances, electronic accessories, among other electronics, including the Recalled Pressure Cookers, nationwide. Defendant is the warrantor and distributor of the Recalled Pressure Cookers in the United States as Insignia is Defendant's own store, or house, brand as Defendant is the owner of the Insignia brand. Defendant designs, produces, markets, distributes, warrants, and sells pressure cookers, including the Recalled Pressure Cookers, along with many other electronics, in multiple locations across the United States.

## FACTUAL ALLEGATIONS

15.     Defendant designs, manufactures, markets, distributes, and sells home appliances, electronic accessories, among other electronics, including the Pressure Cookers at subject here, nationwide and online.

16.     Defendant provides each individual with a User's Guide, which states "Congratulations on your purchase of a high-quality Insignia product. Your NS-MC80SS9 or NS-MC80SS9-C represents the state of the art in multi-function pressure cooker design and is designed for reliable and trouble-free performance." Ex. A.

17.     Defendant's User's Guide also touts the safety features of the Pressure Cooker, including a "[l]ocking lid [that] keeps the cooker closed while it's pressurized" and a floating valve that "[w]hen pressure builds up inside your cooker, the floating valve pops up and prevents you from removing the lid. When the pressure drops, it drops down." Ex. A.

18.     Defendant's user guide warns consumers of the Insignia Pressure Cookers of the dangers of overfilling the inner pot and, to avoid overfilling, advises consumers to rely upon the

markings Defendant placed on each Pressure Cooker. *See e.g.* Ex. A ("Fill the inner pot with your ingredients. Do not overfill the inner pot. Do not exceed the Max marking which applies to solids and liquids combined.").

19.     Despite these safety features, and Defendant's claims of safety, Defendant manufactured, designed, marketed, imported, distributed, and sold a product that suffers from serious and dangerous defects.

20.     As a result of the dangerous and unsafe nature of the Pressure Cookers, on October 26, 2023, Best Buy announced a recall of the Insignia Multi-Function Pressure Cookers with model numbers of NS-MC60SS8, NS-MC60SS9, or NS-MC80SS9, and inner cooker pots with model numbers of NS-MCRP6NS9 and NS-MCRP6SS9, sold separately as replacements.[5]

21.     The recall was enacted due to "[t]he inner pots supplied with the pressure cookers and sold separately have incorrect volume markings. This can cause consumers to overfill the pot and hot food and liquids to be ejected when the pressure cooker is vented using the quick release method or opened while its contents are pressurized, posing a burn hazard to consumers. The units were sold throughout the United States and Canada from October 2017 to June 2023."[6]

22.     Plaintiff, along with all other consumers, purchased the Pressure Cookers with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

23.     In 2021, Plaintiff purchased the Pressure Cooker, with a Model Number of NS-MC80SS9, online from Best Buy.

[5]https://www.cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard (last visited December 27, 2023).
[6] https://www.recallrtr.com/pc (last visited December 27, 2023).

24.     Plaintiff's Pressure Cooker is one of the model numbers is included within Defendant's Recall.[7]

25.     Unknown to Plaintiff and all other purchasers of the Pressure Cookers, prior to the recall, Defendant defectively and negligently designed, manufactured, produced, distributed, and sold the Pressure Cooker as it failed function properly and safely. Thus, even when using the Pressure Cooker as intended and instructed, Defendant put all consumers of the Pressure Cookers in danger by putting a defective product into the stream of commerce.

26.     These defects make the Pressure Cooker unreasonably dangerous for its intended use by consumers.

27.     Since October 2017 and up through June 2023, Defendant has designed, manufactured, distributed, and sold the Recalled Pressure Cookers. Defendant has sold over 930,000 Recalled Pressure Cookers nationwide.[8]

28.     As mentioned earlier and discussed in more detail below, the Recalled Pressure Cookers contain a design defect that causes a serious safety concern. That is, the volume measurements or markings on the inside pot of the Pressure Cookers are incorrect and defectively designed.

29.     According to the Consumer Product Safety Commission: "The pressure cooker has incorrect volume markings on the inner pot. This can cause consumers to overfill the pot and hot food and liquids to be ejected when the pressure cooker is vented using the quick release method or opened while its contents are pressurized, posing a burn hazard to consumers."[9]

---

[7] https://www.cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard (last visited December 27, 2023).
[8] *Id.*
[9] *Id.*

30.     Since the Pressure Cooker is defective and not safe for its intended use, the Consumer Product Safety Commission directed consumers of the Insignia Pressure Cookers to "immediately stop using the recalled pressure cookers."[10]

31.     Best Buy's active and consistent promotion of its Insignia brand pressure cookers, Best Buy's general marketing and promotional of its overall positive reputation led Plaintiff, and other consumers, to perceive Insignia as a quality company with a strong reputation for producing reliable and safe pressure cookers.

32.     In addition to relying on Best Buy's general reputation, which Best Buy gained through marketing and promotion, Plaintiff and all other purchasers of the Pressure Cookers chose the specific Insignia model because they believed the Pressure Cooker was a high-quality, free of defects, and safe to use.

33.     Defendant's representations regarding the quality and safety of the Insignia Pressure Cookers were false, misleading, and material when Plaintiff, and all consumers, were deciding to purchase the Pressure Cooker.

34.     Safer alternative designs were available to Defendant that could have prevented the Pressure Cooker from being defective, dangerous, and unfit for its intended purpose.

35.     As a direct and proximate result of Defendant's failures, consumers of the Insignia Pressure Cooker, unknowingly, purchased a dangerous, inoperable, and worthless product.

36.     Given Defendant's representations, labeling, marketing, advertising, and sale of the Pressure Cookers, Plaintiff, and other consumers, purchased the Pressure Cookers believing it to be safe and free of defects.

---

[10] *Id.*

37.     Plaintiff, and all other consumers of the Pressure Cookers, would not have purchased the Insignia Pressure Cookers had they known of the defective, dangerous, inoperable, and worthless nature of Defendant's Pressure Cookers.

38.     Plaintiff and Putative Class members were deprived of their benefit of the bargain and was monetarily harmed by Defendant's inoperable, unusable, nonconforming, and dangerous Product.

39.     At no point was Plaintiff informed by Defendant of any recalls or defects related to his pressure cooker by anyone affiliated with Best Buy. Instead, he learned of the defects through social media.

## <u>CLASS ACTION ALLEGATIONS</u>

40.     Plaintiff brings this action on behalf of himself and as a class action on behalf of all others similarly situated, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure. Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons in the United States who purchased any recalled Insignia Pressure Cooker from October 2017 to June 2023.

**Georgia Subclass:** All persons from Georgia who purchased any recalled Insignia pressure Cooker from October 2017 to June 2023.

41.     Together, the Nationwide Class and Georgia Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

42.     Excluded from each of the putative classes is any employee or contractor of Defendant and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

43.     The members of (i) the Nationwide Class, and (ii) the Georgia Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents, and from public records.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

46.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

47.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant, and Plaintiff can only obtain it through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

48.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

a. Whether Defendant's Insignia Brand Pressure Cookers that Defendant designed and sold possess a material defect;

b. Whether the Defect creates an unreasonable risk that the volume markings in the Pressure Cookers may lead to overfilling by the user/consumer, resulting in its super-heated contents erupting from the pot when the pressure cooker is vented using the quick release method or opened while its contents are pressurized;

c. Whether Defendant knew or should have known that the Pressure Cookers possessed the Defect at the time of sale;

d. Whether Defendant omitted to disclose the defect;

e. Whether Defendant concealed the Defect, once it knew of the defect;

f. Whether Defendant breached express warranties relating to the Pressure Cookers;

g. Whether Defendant breached implied warranties of merchantability relating to the Pressure Cookers;

h. Whether Defendant violated the Magnusson-Moss Warranty Act;

i. Whether Plaintiff and Class Members are entitled to damages;

j. Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Pressure Cookers;

k. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Pressure Cookers; and,

l. Whether Plaintiff and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

49.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Pressure Cooker with the same defects found in all other Pressure Cookers recalled by Defendant and all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

50.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Classes.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

51.      A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

52.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Predominance and Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(3)**

53.     Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether Defendant's Insignia Brand Pressure Cookers that Defendant designed and sold possess a material defect;

b. Whether the defect creates an unreasonable risk that the volume markings in the Pressure Cookers may lead to overfilling by the user/consumer, resulting in its super-heated contents erupting from the pot when the pressure cooker is vented using the quick release method or opened while its contents are pressurized;

c. Whether Defendant knew or should have known that the Pressure Cookers possessed the defect at the time of sale;

d. Whether Defendant omitted to disclose the defect;

e. Whether Defendant concealed the defect, once it knew of the defect;

f. Whether Defendant breached express warranties relating to the Pressure Cookers;

g. Whether Defendant breached implied warranties of merchantability relating to the Pressure Cookers;

h. Whether Defendant violated the Magnusson-Moss Warranty Act;

i. Whether Plaintiff and Class Members are entitled to damages;

j. Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Pressure Cookers;

k. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Pressure Cookers; and,

l. Whether Plaintiff and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

54.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Classes)**

55.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

56.     Plaintiff brings this count on behalf of himself and the Classes.

57.     Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Recalled Pressure Cookers. The terms of the contract include Defendant's promises, affirmations of fact, and express warranties.

58.     The terms of the contract include the promises and affirmations of fact that Defendant made on the Recalled Pressure Cookers' packaging and through marketing and advertising, as described above.

59.     This labeling, marketing, and advertising constitute express warranties, and they became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the Class Members, on the one hand, and Defendant, on the other.

60.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Recalled Pressure Cookers are safe for their intended use.

61.     Plaintiff and the Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Recalled Pressure Cookers.

62.     Defendant breached express warranties as to the Recalled Pressure Cookers and their abilities and qualities because Defendant's Recalled Pressure Cookers contained defects rendering them unsafe for their intended use. Thus, the Recalled Pressure Cookers do not conform to Defendant's affirmations and promises described above.

63.     Neither Plaintiff nor any of the Class Members would have purchased the Recalled Pressure Cookers had they known the true nature of the Defect.

64.     Due to Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

65.     Plaintiff suffered injury through Defendant's conduct because he suffered economic loss and purchased a pressure cooker that is now worthless and unsafe.

<u>COUNT II</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Classes)**

66.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

67.     Plaintiff brings this count on behalf of himself and the Classes.

68.     Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Recalled Pressure Cookers.

69.     The Recalled Pressure Cookers are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Recalled Pressure Cookers, as goods, were purchased.

70.     Defendant entered into agreements with consumers to sell the Recalled Pressure Cookers for Plaintiff's and Class Members' personal use.

71.     The implied warranty of merchantability included with the sale of each Class Pressure Cooker means that Defendant guaranteed that the Recalled Pressure Cookers would be fit for the ordinary purposes for which pressure cookers are used and sold and would not be otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, on the one hand, and Plaintiff and the Class Members, on the other.

72.     Defendant breached the implied warranty of merchantability because the Recalled Pressure Cookers are not fit for their ordinary purpose of safe cooking. After all, Defendant did not indicate that the Recalled Pressure Cookers would contain a hazardous volume measurement Defect.

73.     Given that Plaintiff and Class Members are unable to safely use the Recalled Pressure Cookers without risk of severe burns or injury, the Recalled Pressure Cookers are not fit for their particular purpose of safe cooking.

74.     Defendant's warranty expressly applies to the purchaser of the Recalled Pressure Cookers, creating privity between Defendant and Plaintiff and Class Members.

75.     Privity, although created, is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

76.     Defendant had sufficient notice of its breaches of implied warranties associated with the Recalled Pressure Cookers. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and through its review of consumer complaints. In addition, Defendant's own Recall demonstrates actual notice.

77.     Had Plaintiff, Class Members, and the consuming public known that the Recalled Pressure Cookers had defective volume markings, they would not have purchased the Recalled Pressure Cookers, or they would have paid less for the Pressure Cookers.

78.     As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

79.     Plaintiff suffered injury because he purchased a worthless pressure cooker. For all intents and purposes, Plaintiff's pressure cooker is now a notoriously unsafe pressure cooker with incorrect, thus dangerous, volume markings.

80.     Plaintiff also suffered economic loss due to Defendant's Recall, resulting in a diminished value of the pressure cooker relative to its original purchase price.

81.     Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying refund or replacement. Plaintiff neither anticipated nor paid for a pressure cooker with hazardous and defective volume markings.

**COUNT III**
**VIOLATION OF THE MAGNUSON MOSS WARRANTY**
**ACT (15 U.S.C. § 2301 ET SEQ.)**
**(On Behalf of Plaintiff and the Classes)**

82.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

83.     Plaintiff brings this count individually and on behalf of the Classes.

84.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

85.     Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

86.     The Recalled Pressure Cookers are "consumer products" within the meaning of the MMWA.

87.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer damaged by a warrantor's failure to comply with a written or implied warranty.

88.     Defendant's express warranties are written warranties within the meaning of the MMWA.

89.     Defendant breached its warranties by offering for sale and selling the Class Pressure Cookers, which were by design and construction defective and unsafe due to the Defect.

90.     Defendant's actions subjected Plaintiff and the Class to danger; those actions also caused monetary damages because the Recalled Pressure Cookers are inherently worth less than they would have been without the Defect.

91.     Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall.

92.     Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Classes, when the pressure cookers fail to perform due to the Defect.

93.     Due to these breaches, Plaintiff and the Classes have suffered damages.

94.     Plaintiff and the Classes seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Classes may be entitled.

95.     Plaintiff and the Classes suffered injury through Defendant's conduct because Plaintiff and the Classes are now owners of pressure cookers that are worth significantly less, given the Defect and the notoriety thereof.

## COUNT IV
### NEGLIGENT DESIGN DEFECT
### (On Behalf of Plaintiff and the Classes)

96.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

97.     Plaintiff brings this claim against Defendant on behalf of himself and the Classes.

98.     Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Recalled Pressure Cookers.

99.     Defendant breached this duty by defectively designing and manufacturing the Recalled Pressure Cookers, thus rendering the pressure cookers neither fit nor suitable for their intended purposes.

100.    Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Classes because the Recalled Pressure Cookers now are worth less than they were before the Defect became known, given the notoriety of the Defect.

101.    Defendant did not exercise due care in the production of the Recalled Pressure Cookers. Defendant's design created horribly inaccurate volume markings, while many other volume measurements and markings, in all sorts of similar existing pressure cookers, do not have this Defect.

102.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss when he purchased a pressure cooker that is now worthless and unsafe.

103.    The design of the Recalled Pressure Cookers' defect is unacceptable because other pressure cookers produced by other companies and manufacturers work properly and do not have this same defect. In fact, Defendant has produced other pressure cookers without similar defects.

## COUNT V
## STRICT LIABILITY- MANUFACTURING DEFECT
### (On Behalf of Plaintiff and the Classes)

104.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

105.    At all times relevant to this litigation, Best Buy engaged in the business of researching, testing, developing, manufacturing, marketing, selling, distributing, and promoting their house-brand Insignia Pressure Cookers, which are defective and unreasonably dangerous to

consumers, including Plaintiff, because of manufacturing defects, which consumers, including Plaintiff did not expect.

106.    Upon information and belief, the Pressure Cookers were defective and unreasonably dangerous because they failed to correctly and accurately engrave volume markings on the inner pot of its pressure cookers.

107.    Plaintiff and Class Members could not reasonably have discovered the Defect, including the manufacturing defect, and risks associated with the incorrect volume markings before or at the time of his purchase. Plaintiff and Class Members relied upon the skill, superior knowledge, and judgment of Best Buy

108.    Best Buy is liable to Plaintiff and Class Members for injuries caused as a result of its manufacturing defects.

109.    The defects in Best Buy's Pressure Cookers were substantial and contributing factors in causing Plaintiff's and Class Members' damages, and, but for Best Buy's misconduct and omissions and the pressure cookers' defects, including but not limited to its manufacturing defects, Plaintiff and Class Members would not have sustained the losses that have been sustained to date, and would not have been exposed to the risk and dangers associated with the pressure cookers.

110.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages from the purchase of worthless, unsafe pressure cookers.

**COUNT VI**
**STRICT LIABILTY- FAILURE TO WARN**
**(On Behalf of Plaintiff and the Classes)**

111.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

112.    At all relevant times, Defendant was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing Insignia Pressure Cookers in the regular course of business.

113.    At all relevant times, including the time of sale and consumption, Defendant failed to include adequate and proper warnings and/or instructions regarding the defects in its pressure cookers and risk of injury associated with regular and foreseeable use of the pressure cookers.

114.    Defendant had a duty to exercise reasonable care in the advertising and sale of the pressure cookers, including a duty to warn and instruct Plaintiff and Class Members of the dangers associated with use of the pressure cookers that were known or should have been known to Defendant at the time of sale of the pressure cookers to Plaintiff and Class Members.

115.    Defendant knew or should have known Plaintiff and Class Members could foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care in providing adequate warnings as described herein.

116.    Defendant breached its duty to Plaintiff and Class Members by failing to exercise due care under the circumstances.

117.    The pressure cookers were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to their lack of appropriate and necessary warnings.  Specifically, Defendant negligently failed to provide sufficient or adequate warnings to Plaintiff and Class Members regarding the hazards associated with the pressure cookers.

118.    Defendant, by excising reasonable diligence, could have made such warnings available to Plaintiff and Class Members.

119.    As a direct and proximate result of Defendant's failure to provide Plaintiff and Class Members with sufficient or adequate warnings, Plaintiff and Class Members were not adequately informed of the potential dangers and/or defects of the pressure cookers.

120.    Had Plaintiff and Class Members been adequately warned of the unreasonable dangers and risks of the pressure cookers, Plaintiff and Class Members would not have purchased or used the Devices.

121.    As a direct and proximate result of Defendant's conduct, including actions, omissions and misrepresentations, Plaintiff and Class Members suffered and will continue to suffer actual damages from the purchase of worthless, unsafe pressure cookers.

**COUNT VII**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff and the Classes)**

122.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

123.    Plaintiff brings this count on behalf of himself and the Classes.

124.    Defendant knew that the Recalled Pressure Cookers suffered from an inherently defective and incorrect volume marking, were defectively designed and/or manufactured, and were not suitable for their intended use. Defendant designed, engineered, and produced the Recalled Pressure Cookers; therefore, it created the Defect and knew of that Defect.

125.    Defendant concealed from and failed to disclose the defective nature of the Recalled Pressure Cookers to Plaintiff and Class Members.

126.    The fact that Defendant's Recalled Pressure Cookers contained the volume marking Defect is a material fact, because the correct volume marking inside of a pressurized container is the most basic safety precaution included in pressure cookers.

127.    This volume marker on the Recalled Pressure Cookers is utterly critical because it is highly dangerous to overfill a pressurized container that keeps steam, heat, and the pressurized contents from being spontaneously released.

128.    Defendant knew of the falsity of volume measurements and/or recklessly disregarded the truth or falsity of the Defect's dangerous nature.

129.    Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell pressure cookers.

130.    Plaintiff and Class Members would not have purchased the Recalled Pressure Cookers had they known of the Defect. Plaintiff and the Class did not know of the Defect; in purchasing the Recalled Pressure Cookers, they relied upon Defendant's false presentation of safety.

131.    Plaintiff did not know of and could not have discovered the Defect, unless Plaintiff were to overfill the Class Pressure Cooker and await its potential combustion. This possibility exists outside of reality because—even if such a possibility would occur to an ordinary consumer—it is highly improbable that any pressure-cooker retailer would allow for such intensive experiment or inspection.

132.    Defendant had a duty to disclose the defective nature of the Recalled Pressure Cookers to Plaintiff and Class Members, because:

i       Defendant was in a superior position to know the true state of facts about the volume markings Defect in the Recalled Pressure Cookers;

ii      The omitted facts were material because they directly impact the safety of the Class Pressure Cookers;

iii     Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

iv       Defendant actively concealed the defective nature of the Recalled Pressure Cookers from Plaintiff and Class Members.

133.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material. A reasonable person would have considered those facts to be important in deciding whether to purchase or lease Defendant's Recalled Pressure Cookers or to pay a lesser price for them. Specifically, whether a pressure cooker becomes dangerous and inoperable when volume markings are incorrect is a material safety concern, given the inherent burn risk with hot, pressurized contents.

134.    Had Plaintiff and Class Members known about the Defect, they would not have purchased the Recalled Pressure Cookers or would have paid less for them.

135.    Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Recalled Pressure Cookers, in order to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment, as evident from Plaintiff's and Class Members' purchase of the Recalled Pressure Cookers.

136.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase of the Defective Pressure Cookers and obtain restitution or (b) affirm their purchase of the Defective Pressure Cookers and recover damages.

137.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and to enrich Defendant in reckless disregard of Plaintiff's and the Class's rights and well-being. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

138.    Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a worthless, unsafe pressure cooker.

**COUNT VIII**
**STRICT LIABILITY- DEFECTIVE DESIGN**
**(On Behalf of Plaintiff and the Classes)**

139.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

140.    Defendant is the designer, manufacturer, seller, distributor, marketer, and supplier of the subject pressure cooker which was defectively designed and unreasonably dangerous for its intended use by foreseeable consumers such as Plaintiff.

141.    The subject pressure cooker was unreasonably dangerous in design due to the pressure cooker's having incorrect volume markings. Such enabled, during the normal, directed use of the pressure cooker, for it to be improperly filled which then allowed its scalding hot contents to be forcefully ejected from the pressure cooker and onto users of the product.

142.    The aforementioned design defects rendered Defendant's product unsafe and unfit for its intended use.

143.    Defendant's product was in this defective and dangerous condition at the time it left Defendant's possession.

144.    Defendant failed to act reasonably in choosing a design of the subject pressure cooker that had the correct volume markings.

145.    Defendant could and should have used a safer alternative design to prevent the pressure cookers to be overfilled and therefore potentially burning its users.

146.    A reasonable consumer, including Plaintiff, would not have reason to expect that the subject pressure cooker had incorrect volume markers, would not be able to detect any such defect, and would not have any knowledge as to how to prevent such an incident from occurring.

147.     The subject pressure cooker was expected to reach and did reach the intended consumers, including Plaintiff, without substantial change in the condition in which it was sold.

148.     Plaintiff did not misuse or materially alter the subject pressure cooker and is unaware as to how he could have avoided the incident.

149.     The subject pressure cooker was defective at the time of its design, and such defects and risks of harm outweighed the utilities and/or benefits of its design.

150.     At the time it was sold, Defendant knew or should have known that their pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public.

151.     As a direct and proximate result of the design defects contained within the subject pressure cooker, Plaintiff suffered and continues to suffer injuries and damages, for which the Defendant in this case is liable.

## COUNT IX
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Classes)

152.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

153.     Plaintiff brings this count on behalf of himself and the Classes.

154.     Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Recalled Pressure Cookers.

155.     Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

156.     Because Defendant obtained this benefit unlawfully—namely, by selling and accepting compensation for the Recalled Pressure Cookers without providing correct and safe volume markings in the Recalled Pressure Cookers—it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

157.    Moreover, the circumstances as described further herein are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

158.    Defendant manufactured, marketed, and sold the Recalled Pressure Cookers under the guise of these Pressure Cookers being safe and operable. Instead, Defendant sold Pressure Cookers with faulty volume markers that created deadly fire hazards and burn risks.

159.    Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT X**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Classes)**

160.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

161.    Plaintiff brings this count on behalf of himself and the Classes.

162.    Defendant caused Recalled Pressure Cookers to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

163.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Recalled Pressure Cookers, including the duty to take all reasonable steps necessary to provide effective volume markings in the Recalled Pressure Cookers.

164.    Defendant breached this duty by producing Recalled Pressure Cookers with a volume marking Defect. For some time, Defendant has produced other Pressure Cookers without this Defect; that in itself is evidence that Defendant did not exercise proper care in producing the

Recalled Pressure Cookers. As further evidence of Defendant's lack of care, many other manufacturers produce pressure cookers with true and correct volume measurement markings.

165.    Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known, that not providing effective volume markings could cause or be associated with Plaintiff's and Class Members' injuries.

166.    Defendant's alleged negligence included:

    a.  Selling and/or distributing the Recalled Pressure Cookers while negligently and/or intentionally not providing correct volume markings; and

    b.  Systematically failing to provide consumers with correct volume markings in multiple states.

167.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

168.    But for Defendant's negligent design, production, and marketing of Recalled Pressure Cookers, Plaintiff and the Classes would not be injured as they would not have purchased the worthless Recalled Pressure Cookers.

169.    Plaintiff's and Class Members' injuries were foreseeable, because at the time of purchase of Defendant's Product, Defendant had received complaints from consumers regarding failure to provide a safe and effective volume markings in the Recalled Pressure Cookers.

170.    Further, it is foreseeable that a pressure cooker with an incorrect volume marking would be worthless as it would be an incredibly dangerous pressure cooker to use.

171.    Due to Defendant's breach, Plaintiff and the Classes were harmed in that they now own a useless pressure cooker with a dangerous Defect given Defendant's confounding lack of due care in designing and producing the Pressure Cookers.

172.    Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

173.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss by purchasing a pressure cooker that is now unsafe and thus worthless.

174.    Plaintiff also suffered damages because Plaintiff and the Classes have been greatly inconvenienced by Defendant's Recall.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the members;
   of the Proposed Classes of the pendency of this action;

C. Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Instituting an injunction requiring that Defendant engage in a corrective notice campaign;

E. Scheduling a trial by jury in this action;

F. Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

G. Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

H. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: January 5, 2023

Respectfully Submitted,

*/s/ Brent Michael Kaufman*
Brent Michael Kaufman, Esq.
Paul J. Doolittle (*Pro Hac Vice forthcoming*)
Blake G. Abbott (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
          blake.abbott@poulinwilley.com
          brent.kaufman@poulinwilley.com